case number 19-3086 United States of America versus Derrick E. Arrington appellant. Ms. Wright for the appellant, Mr. Lenners for the appellate. Good morning, counsel. Morning. May it please the court. Lisa Wright representing Mr. Arrington, I'd like to reserve two minutes for rebuttal. Mr. Arrington's 2255 motion asserted a right to relief under the new retroactive rule announced by the Supreme Court in Johnson. That motion was timely under 2255 F3 because it was filed within one year of the date Johnson was decided. Government contends that Arrington's 2255 motion was in a sense premature because the Supreme Court has not yet expressly held that the Johnson right applies to the mandatory guidelines context. A problem with this theory is that if the Supreme Court were to issue such ruling, it would not restart the one-year limitations window because it would not qualify as a newly recognized right. It would not be a new rule, but simply an application of the new rule recognized in Johnson to facts that are not meaningfully distinguishable from those in Johnson. So the window for people like Mr. Arrington opened in Johnson and with Johnson, and if this motion is timely now, an explicit ruling by the Supreme Court later will do him no good. But even if pre-Booker defendants like Mr. Arrington could benefit from an explicit ruling by the Supreme Court, under the government's conception of the timeliness requirement, there will never be such a ruling because Booker did away with the mandatory guidelines 16 years ago, meaning there aren't any pre-Booker defendants in a position to pass the timeliness hurdle and get such a ruling on the merits. So respectfully, the courts that have adopted the government's misapplied 2255F3 for the reasons that the Seventh Circuit explained in Cross. They have imported the merits into the statute of limitations inquiry. The statute of limitations runs from the date on which the right asserted was recognized by the Supreme Court, requiring only that Mr. Arrington claim the benefit of a newly recognized right and retroactive right, not that he established as part of the timeliness inquiry, that the right applies to his particular facts. So you would argue that our opinion in Williams sets the model? Um, I would have to... Well, in Williams, we said that, a quote, we use this analogy that courts of appeals like District Court have the authority to raise a forfeited timeliness defense on their own initiative. And so the court went on to address the issue itself. I just want to understand how you get around both the District Court's view of what was wrong with that approach, as suggested by one of the other circuits. Well, if I'm understanding, we, the District Court did reach the issue. And we are taking issue with the reasoning of it. And I didn't, I'm not seeing a different, I mean, a problem between Williams and Cross, for example. Maybe misunderstanding of what the court is asking. But I guess, as I read the District Court opinion, it rejected Cross. Yes. As contrary to the text. All right. So, um, I know we would be bound by Williams, if it were directly on point. But I'm just trying to understand, given what the Supreme Court has said, about waiting for the Supreme Court to indicate that, you know, it's ruling applies in circumstances like your clients. Well, I don't, the court has not, has not, the Supreme Court has not said that we always have to wait. If there's, if it would be a new rule, then it's not recognized until it's recognized by the Supreme Court. But I give an example of, I think the best example, a very good example is the Stringer v. Black case that's mentioned. And in that, that case is very analogous, because there was a string of cases, it was involved, whether a death penalty factor was unconstitutionally vague. And the court first ruled on the Georgia factor. And then, and then it applied that same holding to a Pahoma factor that was similarly worded. And then finally, really, of interest here, I think, is it then went ahead and applied it to a Mississippi case, which was a little substantively different. It wasn't just different wording, but it was the factor in Mississippi was weighed as opposed to just triggering the death penalty possibility. And the court had explicitly said, in another case, Zant, that that issue was open, the issue of whether it applied to weighing states. And when, ultimately, when the court said it did in Mississippi v. Clemens, then in Stringer, it ultimately ruled that Mississippi v. Clemens did not state a new rule, even though in Zant, the court had said the issue was open. So I don't, I think it's clear that the court has, will say often, not only do you not always have to wait to see what the court is going to explicitly say, but even if the court has called an issue expressly open, it can still be not a new rule. That's... Mr. Wright, let me, as I see this, to me, this case boils down to one question. And that is, how do we describe the right articulated in Johnson? To me, that's what this case is about. Now, the Seventh Circuit, and you, the two of you in the Seventh Circuit, you describe it as a right not to be sentenced under a rule of law using the residual clauses vague language. That's what the right is that you articulate. We could describe it more broadly, not to be sentenced under a career, under a vague career offender position, or we could define it much more narrowly the way the government does. How do we decide which is those is right? Because they're out, which one you pick is outcome determinants here? Well, why would we pick yours over the government's? Well, what's the principle that would have us do that? I think the principle is, is there a meaningful distinction? I guess I get that language from right, the West. And since the language itself is identical, I don't think there's any way to state the language part of it any more narrowly than I am, because language is identical to what the language in Johnson was. So it's as narrow as it can be. So I think what it comes down to is, is does Johnson say that a law cannot fix sentences? Or does it say a statute cannot fix sentences? And I guess I do not see that as a meaningful distinction, because the guidelines are a law that act like a statute. Booker said that they had the force and effect of law and were binding. So I think that there just isn't a meaningful enough distinction. And obviously, on some level, only the Supreme- But the government says, but no, but see, government says the right is a right not to be sentenced under the armed career offender statute clause. That's what they say the right is that it's specific to that statute. You say the right is specific to the to a similar provision. You say it's you say it's a right not to be sentenced under the vague language in the residual, residual, in the residual clause. They say it's based, they say the right is linked to the statute. You say it's broader. And it's a right not to be sentenced under the language, that kind of vague language. And my only question is, how do we, you can make an argument for either one of them. And your client wins under one and loses under the other. So what's the principle that we use to pick one over the other? Well, I didn't understand the government to be saying, I thought with a reference to ACCA was a reference that it's the only law that Johnson applies to is ACCA. And we're saying that the law, any law, like Beckles did not involve a law, involved a guideline. And I thought government is saying that ACCA is the law that is the right. Even under the government's definition, that is that it only applies to law that covers the guidelines here. Is that your point? That's what I'm saying. And I'm saying ACCA is the holding of Johnson is about ACCA. All the Supreme Court is doing in Johnson is taking the right that is recognized, which is not to be sentenced by a vague language in a law that's where a law fixes sentences and apply that to the ACCA context and the holding of Johnson. But the right recognized in Johnson, it's just, it's not much broader. We're not asking for something much broader, just a little broader. Just recognizing that mandatory guidelines aren't even really guidelines. I mean, they're really like an oxymoron, mandatory guidelines. And it's kind of dawned on me finally, why it was always so hard to explain to clients how the mandatory guidelines, how they worked with the statute, when of course to a lay person, they're not guidelines at all. And the range that they are being told by the statute has actually been replaced. Congress didn't want judges to have their discretion guided by the mandatory guidelines. They were trying to take away a large chunk of the discretion here. Not replaced, narrowed. Well, correct. Yeah. I mean, to the point that for example, here, zero to 210 was simply not available. So in a sense, 210 did become the new mandatory minimum. So I don't know if the word, what was the statutory range here? It was still technically zero to 240, but it had no effect up to 210. And that's an important issue of notice to a defendant. So what do you make of the government's argument that if zero to 240 with no guidance was not unconstitutionally vague, narrowing the judge's discretion with this residual clause, which though vague is not as vague as nothing, cannot be unconstitutionally vague? Well, I think it comes down to what we were just talking about because the government sees it as the zero to 240 is still the range and the mandatory guideline is just guidance. And what I'm saying is that the mandatory guideline range is really the range. And what's on the statute books is essentially been trumped or overridden. So the court, and yes, it's exercised discretion within the range, but nobody knows which range applies. Is it 168 to 210 or is it 210 to 240? And zero to 240 is really no longer effective under the mandatory regime. And that was the part of the problem. That's why Booker had to get rid of it. Let me briefly, if I can go back to Judge Tatel's question. We know that the rule that came out of Johnson was a rule broad enough to help Johnson. And maybe it was broader, maybe it wasn't. Isn't the answer to the question of whether or not it was broader, we don't yet know. Well, I think, but we have to decide today whether he's taking, whether he's asserting a newly recognized right. And so in some sense, it's necessary to predict whether, if such a rule were announced, if it would be a newly recognized right, or if it would be just an extension as the Supreme Court frequently finds, for example, if like conclusive presumption case, then they have a rebuttable presumption case. And they ultimately find that the second case wasn't a new rule because it's not a meaningful distinction. And so I do think this court can decide if, obviously it's a prediction as all Court of Appeals decisions are, what the Supreme Court would think. Has the Supreme Court told lower courts that in the AEDPA context, we're really not supposed to guess, to guess whether something would be new, you mean? Well, to guess whether a Supreme Court precedent will apply in a novel context. Well, again, I don't, I think that I'm not aware of anything that suggests that the ordinary Teague wouldn't apply as it does in other cases. And in applying that Teague rule, this is not the kind of meaningful distinction that would set up the right where the holding that we want to be considered a new rule, as opposed to just... I thought, I'm sorry to interrupt, but I thought your point was, and I thought your answer to Judge Walker would have been, yes, we don't yet know whether the right articulated in Johnson would apply to Arrington's situation, but that's the right he's asserted. Well, right, that under cross... Isn't that your, isn't that your view? That's, your view is the same as the Seventh Circuit's, right? That to ask that question, whether or not the Johnson right would apply to Arrington is the merits question. The only question here is, has he asserted the right, which is why I asked you the question I did, what is the right declared in Johnson? Isn't that the way to think about it? Yes, and that is our primary argument, but the Teague discussion, I kind of jumped ahead. I'm sorry, but what? That is our prime argument, the cross argument. I sort of jumped ahead to the Teague argument, which is, I think, our fallback argument. We don't have to get to the Teague argument if we agree with you on cross, right? That's correct, because it's only if merits have to be reached that we then have to figure out the substance of it. Yeah, right. Okay, thanks. Yeah, I get you. I'm sorry I got off track on it, but yes, that is the point, and I agree that it comes down to how you define the right that's asserted, but I, again, to me, the right, it's identical, really, unless we think that the only law the Supreme Court met when it said a law can't fix permissible sentencing range is ACCA itself, and that's just not how Supreme Court precedent works. You look not just to the holding, but to the logical. Obviously, within, when you're talking about another law that is just as much of a law as was the ACCA law, ACCA itself, for example, was subject to, it had like escape hatches from it as well, so there really isn't any difference with that and the departure possibility here, which, of course, we recall was very rare. So it's our position that under both cross, the cross is actually the correct way to look at it, that the merits can be reached, and that's what two district judges in the circuit, Judge Huvell and Judge Howell, have both come to that conclusion and followed cross, and we would ask the court to do the same, but alternatively, to recognize that under Teague, this would not break new ground in the language of the Supreme Court. I can address the government's alternative contentions if the court is interested. Otherwise, I would ask the court to reverse and remand for resentencing on his 25 petition. Thank you. Thank you. Reserve some time for rebuttal. All right, counsel, for Hathaway. Thank you, Your Honor. Good morning, and may it please the court, Dan Lenners, United States. Under 18 U.S.C. 2255 F3, the right asserted by a defendant must have been newly recognized by the Supreme Court. The overwhelming majority of circuits have recognized that for a right to be recognized, the Supreme Court must have formally acknowledged it in a definite way, or it must be dictated by precedent. Johnson neither dictates the rule that Arrington seeks to apply here, which is the inability to apply the mandatory guidelines residual clause to determine a defendant's sentence. The Supreme Court did not formally acknowledge that right in a definite way. So what I was trying to understand is hasn't this court already adopted the approach that appellant is arguing? The case is different, but we can look at the right being asserted, and that is enough on this procedural threshold issue without reaching the merits. No, Your Honor. I don't understand. Arrington has not argued that this court has adopted a specific approach under 2255 F3. No, I agree. All right, and I acknowledge that it was a different circumstance, but that seems to be the approach if we have to choose between the circuits and in response to Judge Tatel's underlying question, why wouldn't we take that as some guidance? Now, your answer may be, well, the Supreme Court has moved on and made clear that it wants the lower courts to wait for it, and until it says specifically, there is nothing to address. If your Honor's question is why should the court not adopt the approach taken by Closs, the government's view is that for the same reasons that five other circuits have since rejected that approach. That's not especially helpful response. I mean, we face reach different conclusions all the time. Let me ask you this. I want to ask you a question similar to the one I asked counsel for Arrington, but also a response to what you said. So the, doesn't the question turn on how you define the right articulated in Johnson? And why isn't Arrington and the Seventh Circuit correct here? That the right is a right not to be sentenced under a rule of law that uses the vague language in the residual clause. Why isn't that the right? It's the same language. Why is it, what makes it under your view, limited to the language of the statute? And let me just ask you a second question to that, and then you can answer them both. And well, no, go ahead. Sorry. You go ahead. I think I have three reasons, Your Honor. The first is that Beckles expressly recognized that a defendant may be sentenced under this language when the language is advisory. But that's not our case. That's not our case, but that's not our case. So what, what are your other two reasons? So, but if I might finish on her, it renders unclear the scope of the right in Johnson, to the degree that it applies to mandatory guidelines, given that it doesn't apply to advisory guidelines and thus courts may rely. My second answer, Your Honor, is that Beckles separately held that there is a limited scope of the void for vagueness doctrine in the sentencing context, given the long history of discretionary sentencing. So that also counsels against reading the rule in Johnson more broadly in the sentencing context. Okay, but this is pre-booker. I understand that, Your Honor, but the point is that it's the it's pre-booker. So what's your third reason? And my third reason, Your Honor, is that the Supreme Court has routinely counseled against reading its precedents at a high level of generality in the HIPAA context. That in HIPAA, the Supreme Court has recognized that Congress meant to narrow the availability of previous, both substantively and with the timing, and has repeatedly reversed the mindset for reading. What do you think about the, Seventh Circuit's point that the position you're taking here essentially reads the word asserted out of the statute, out of F3? I disagree, Your Honor. You know, I understand that, but tell me why. Because you have to figure out what right the defendant is asserting in order to figure out whether it's the right. Exactly, and I still haven't heard from you why. I understand the way you've articulated the right in Johnson. I get that. That's a defensible argument. But so is the plaintiff's and the cross view of the right. And I'm searching for a principle that would help me decide which is the correct way to articulate that right. I think the answer lies in Beckles, Your Honor, which is it counseled against reading the right more broadly into the sentencing context. Given the fact that it is fine to use this type of vague language in advisory guidelines, given the long history of discretionary sentencing, and given the narrowness with which the Supreme Court is supposed to be read in the HIPAA context, I think all three of those separately counsel against reading the Johnson right so broadly. And I think the cross is simply wrongly decided. As I said, five circuits have said the cross improperly reads the right recognized out of the statute. So the cross view is not faithful to the statutory language. It's also not faithful to Congress's intent in enacting Ed Buck, because it allows, it undermines congressional intent by just allowing a petitioner to avoid those clear time limits by invoking a right newly recognized by the Supreme Court. Relying on Johnson, it undermines congressional intent in those strict time limits. And it's like, I mean, I understand that this court doesn't feel compelled to follow the herd. But I think the five circuits that have rejected this argument present following logic in explaining why cross was wrongly decided. Let me ask you this. So suppose, this is a hypothetical. Suppose I agree with Arrington here in the way he articulates the right set forth in Johnson, as broader than just the language under that particular statute. Would you agree then that he's not time barred? No, Your Honor. To be clear, it's not the government's position that the right articulated in Johnson is limited to the ACCA. It is broader than that, it would apply to say other statutes with identical language. Okay, good point. I understand. Wait, I couldn't hear the government's response. Sorry. But would you finish your response? It's not so narrow that it only applies to the ACCA. We're not taking that narrow view of 2255. It obviously applies beyond the ACCA. The question is, how far it expands and whether it expands to the mandate. And in our view, ECHLs create significant uncertainty as to whether the Johnson right would expand into the mandatory guidelines because of its invocation of the lengthy history of discretionary sentencing. The fact that said, the notice provided is provided by the statute itself. The fact that it said that you already have arbitrary sentencing under a purely discretionary scheme. And so even a vague guideline narrows the judge's discretion more so than completely discretionary. Okay, so let me restate my question properly, because you're absolutely right. The government's argument is broader than the way I articulate it. And I understand that point. But nonetheless, let's assume that I agree with Arrington that it's broader than just statutory. And it's a right not to be sentenced under that kind of vague language. Let's just this hypothetical, just assume that that's what I think. Do you agree then that he can proceed that he's not barred here? I don't think so, Your Honor. I think that you would have to find that that right is dictated by Supreme Court precedent. Oh, but no, but see, I think, but he is, if I define the right, the way Arrington does, he is, quote, asserting that right. Now, he may in the end be wrong, right, but he's asserting the right. And if your answer is, well, the right doesn't apply in this situation, that's the merits, isn't it? He's asserting the right, but you have to look at whether that right has been recognized by the Supreme Court. So you would have to look. Well, the right he's asserting is a right not to be sentenced under this kind of vague language. That's why my hypothetical rests on me accepting his definition of the right articulated in Arrington, in Johnson. I feel like we're talking in circles, Your Honor. I apologize if I'm not answering your question, but the Supreme, the statute not only requires the right to be asserted, it also has to be recognized by the Supreme Court. And so you need analysis of both. You're right. We're, you're right. We're going in circles. So. Can I ask one question? What's your best precedent for a principle that you asserted earlier, or a proposition rather, that the Supreme Court has repeatedly cautioned lower courts in the Edpa context about reading previously recognized rights broadly? So that's what the Ninth Circuit discussed in Blackstone. And the cases it cited was Nevada versus Jackson, which is a 2013 Supreme Court precedent. And there was a second relatively recent Supreme Court precedent. But the Ninth Circuit discussed both of them in Blackstone and found that this was one of the factors counseling against reading the Johnson right to apply. All right. That's helpful. That's all my question. All right. Thank you. Counsel for appellant. Give you a couple of minutes. I think the main thing I wanted to address was the government gave the three reasons that it's two and one was that, you know, Beckles and makes it unclear. But I mean, our answer to that is obvious that Beckles was advisory about advisory guidelines, and this is a whole different world. But when the court, what the government said about the high level of generality, that's, that's our point. I mean, we're not stating this rule at a high level of generality at all, because the language we're saying can't be used is the identical language. And, and the only, the only, there is no leap here, because the only difference between the holding and the statute in Johnson and the situation here is that the statute there was the Armed Career Criminal Act. And here, the statute is the mandatory guidelines that Congress put in place. And so these are going to determine your minimum and maximum sentences in the ordinary case. And there, it's a law and Booker overruled, got rid of the mandatory guidelines, because they were binding law. And there is no, no distance, practically at all between the ACA law and the mandatory guidelines law. They're both laws and Beckles referred to the word law when it described, Beckles itself used the word law in describing the Johnson right that was recognized. So we don't think we are at a high level of generality. So you feel you're, you're expressing and understandably, a high degree of certainty that, that the question of whether Johnson, Johnson's holding, Johnson's rule covers this situation is not an open question. And there was just as much certainty, if not more certainty, that Johnson covered the Beckles situation, so much certainty that the Solicitor General himself, if I recall, sided with the 2255, or sided with Beckles, I should say. Isn't one of the lessons of Beckles that we should doubt a little bit of our certainty when it comes to thinking that there are, you know, not that there is not an open question, particularly in the Johnson context? Well, that was a, I understand what your honor is saying, there was some assumptions that were made that turned out not to be correct there. But the difference between advisory guidelines and mandatory guidelines, I mean, that was, that was pretty big leap, parties may not have understood the significance of Supreme Court was going to see in it. But you could see that it was a very different context. Here, there isn't really a different context. So I can't imagine in the same legal context, how there could be a different answer. That's, that's, I guess what we're saying, this is just so close. And I did want to just don't, don't, don't, but don't you? To me, you're moving over into the merits to anyway, you answered Judge Walker's question. Don't you, you are serving the right, articulated in Johnson, as you define it, but you must concede that, you know, when a court finally gets around to looking at it, it might conclude you're wrong, right, that that right doesn't protect Arrington, correct? I don't actually need this argument. But in fact, I do think it's unreasonable. No, but, but, but for you to prevail, do you acknowledge that, that, that the right you're asserting on behalf of your client might turn out not to apply to his situation, correct? I would agree that we still win, even if that turned out to be the, we'd still win. You mean you could still win here? Timeliness, yes. Ms. Wright, imagine, imagine if your client were asserting the right the Supreme Court recently recognized in Louisiana v. Ramos, the right not to be sentenced when there's not, you know, unanimous jury. And, and of course, in this case, he was convicted by a unanimous jury. But you say, well, I get past the timeliness, because I'm asserting a recently recognized right. Now we'll debate the merits another time. But I've cleared the timeliness hurdle. Would that argument work? Well, I agree that that theoretical possibility exists. And I think the you know, yes, we are potentially letting through a case to be decided on the merits that is, you know, perhaps, you know, obviously incorrect. But if it's obviously incorrect, it's just as easy to get rid of it as it was to get rid of it at the timeliness stage. So I don't just don't think that's what Congress intended. I'm sorry to keep going back in this, but I don't see this as a a predictive question. The only question is, you are asserting a right as you define it, correct? Yes. Okay. If that's the right articulated in Johnson, then you can proceed. And then we get to decide the merits. But correct, we were not predicting what the result will be. Do you agree with that? I agree with that. And that's what Cross said. We are also arguing as a backup argument that if the court disagrees with that approach. And what's your response to the government's argument? The answer to my question? The same one I asked you, which is, well, the Johnson, whatever, whatever right Johnson articulated is a right that's limited to statutes, and it has no applicability at all, or you can't you can't broaden it to the completely different situation of sentencing. I think that's the government's, I hope I'm articulating it correctly. What's your answer to that? Well, sentencing in general, I would say mandatory guidelines were not traditional sentencing. Because in this case, your answer is Booker, your answer is Booker. This is pre Booker, right? Right. And we don't know what our range is, at all, until we know whether the residual clause applies. And since it's vague, we can't figure it out. So we don't have any notice of what our range is. And judges don't have any way to decide it non arbitrarily. So that's the problem. It's not a traditional sentencing regime as it is today, and as Beckles found it to be. And I guess one thing I didn't get to mention is just that I don't know if the court was concerned about the Justice Sotomayor note about saying that the issue is open. I know this does not go to the cross issue. Although it goes more to the fatigue issue of whether the issue is open or not. But I just want to say it seems obvious that what Justice Sotomayor was saying was just the obvious and probably, frankly, for the benefit of any pre Booker lay prisoners that were reading Beckles to just understand that this issue is not being decided as obvious to you and I, but it might not obvious to people with pre Booker Johnson claims. And that again, I point to Stringer v. Black, that even if Justice Sotomayor and even if the whole court has said it's open, that doesn't close. But again, that doesn't go to the cross argument. The cross argument was very simple. And I think very clear because we are asserting the Johnson right. Johnson was newly 2006 2015. And we filed our claim within one year of that. So that gets us over the timeliness. And then we reach the merits when we do. And for those reasons, we would ask the court to reverse and remand for resentencing without the residual clause. All right, we'll take the case under Thank you.
judges: Rogers, Tatel, Walker